## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 20 2017, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher L. Clerc
Columbus, Indiana

ATTORNEY FOR APPELLEE

Landyn K. Harmon
Columbus, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| N.L.P.,<br>*Appellant-Respondent,*<br><br>v.<br><br>T.A.R.,<br>*Appellee-Petitioner* | July 20, 2017<br><br>Court of Appeals Case No.<br>03A05-1701-JP-236<br><br>Appeal from the Bartholomew<br>Superior Court<br><br>The Honorable Kathleen Tighe<br>Coriden, Judge<br><br>Trial Court Cause No.<br>03D02-1608-JP-4790 |

**Altice, Judge.**

### Case Summary

[1]     N.L.P. (Mother) appeals the trial court's paternity order granting joint physical custody to Mother and T.A.R. (Father) of their two children.  She claims that

the trial court failed to consider certain uncontroverted evidence when making this ruling.

[2] We affirm.

**Facts & Procedural History**

[3] Though never married, Mother and Father – now in their early thirties – have been together nearly all of their teen and adult years. They have frequently lived with and/or been supported by Father's parents (Grandparents). Mother and Father have two children together, A.G.R., born in April 2005, and K.D.R., born in June 2010 (collectively, the Children). Grandparents have played a significant role in the Children's lives and have offered needed stability and financial support to the family. In 2014, Grandparents purchased a home that they added onto and turned into a duplex. Father, Mother, and the Children lived in one side of Grandparents' duplex rent free, and Grandparents lived on the other side.

[4] Both Mother and Father lack a high school diploma and have experienced job instability. Neither are currently employed. Additionally, they both have minor criminal histories and have struggled with prescription-drug addiction. Father discontinued abusing hydrocodone in March 2015, which he began using following a life-threatening auto accident in 2014. Father has yet to fully recover from his injuries. As the result of a felony conviction in 2012 for obtaining a controlled substance by fraud or deceit, Mother was ordered into

treatment and began taking daily doses of methadone until June 2016. Like Father, Mother has reportedly recovered from her addiction.

[5] In March 2015, Mother ended her relationship with Father and moved out, leaving the Children with him. She began living with and dating D.D., a female friend of hers, the following month. Shortly thereafter, Mother and Father agreed to share approximately equal time with the Children. This arrangement appeared to work fairly well for the rest of 2015 and well into 2016, despite some tension regarding Mother and D.D.'s relationship. Father, Grandparents, and Mother's own parents had objections to Mother and D.D.'s same-sex relationship.

[6] During the summer of 2016, Mother and D.D. took the Children on a two-week trip to Wisconsin to visit D.D.'s family without Father's knowledge. Father was unhappy when he learned of this trip, and he began to fear that Mother might remove the Children from Indiana. As a result, he refused parenting time to Mother for over a month. On August 11, 2016, Mother visited the Children at her parents' home. She told her parents that she was entitled to sole custody because she and Father had never been married. Her mother "freaked out" and called Father. *Transcript* at 69. As Mother tried to leave with the Children, her own father pushed her into a chair and tried to pull K.D.R. away from her. Father eventually arrived on the scene. The police were called, and Father was allowed to leave with the Children.

[7] As a result of this incident, Father contacted a lawyer to initiate this paternity action. Father filed his Petition to Establish Paternity, Custody and Related Matters on August 31, 2016. The parties entered into a preliminary agreement, which was accepted by the trial court on October 13, 2016. They agreed to share joint legal and physical custody of the Children during the pendency of the cause as specifically detailed in their agreement.

[8] In the meantime, Mother married D.D. on September 23, 2016, and became a stepmother to D.D.'s two children, ages seven and nine. Mother and D.D. have a structured, loving home in which Mother is the primary caregiver and D.D. is the breadwinner. Father has continued to live in the duplex next to Grandparents, with whom the Children have regular contact. The Children attend school in the district where Father lives.

[9] Mother and Father each believe that the other is a good and loving parent, as do Grandparents. While Father acknowledges that Mother is better at dealing with doctor appointments, both parents have been active with the Children and their schooling through the years. The Children have a close relationship with Mother and Father. In sum, Mother and Father have been relatively successful in sharing the Children and acting in the best interests of the Children in the two years since their separation.

[10] During an in-camera interview, the trial court spoke with eleven-year-old A.G.R. to gain a better view of how the shared custody had been working from her perspective. The court found A.G.R. to be a "well-adjusted young lady

with a keen understanding of the current situation and an obvious love for both parents." *Appendix Vol. 2* at 12. Based on this conversation, the court found that "the children seem to be immune to their parents' conflict." *Id.*

At the final hearing on December 20, 2016, Mother expressed her desire to have primary physical custody of the Children with Father exercising parenting time. She believed the current arrangement was difficult on the Children, as well as her and Father. Father, on the other hand, sought to continue their shared parenting plan. The trial court's in-camera interview with A.G.R. occurred shortly after the final hearing.

On January 3, 2017, the trial court issued its order regarding paternity, custody, and child support. The court ordered, among other things, that the shared custody arrangement continue. In this regard, the court found that "[t]he children have adapted to the schedule well" and "have prospered by having relatively equal time with each parent". *Id.* at 13. Mother appeals from this order. Additional facts will be provided below as needed.

**Standard of Review**

The trial court entered findings in this case sua sponte. Thus, its specific findings control only with respect to issues they cover, and a general judgment standard applies to issues outside the findings. *Montgomery v. Montgomery*, 59 N.E.3d 343, 349 (Ind. Ct. App. 2016), *trans. denied.* Further, we will set aside the court's finding or judgment only if they are clearly erroneous. *Id.*

"Additionally, there is a well-established preference in Indiana 'for granting latitude and deference to our trial judges in family law matters.'" *Steele-Giri v. Steele,* 51 N.E.3d 119, 124 (Ind. 2016) (quoting *In re Marriage of Richardson,* 622 N.E.2d 178, 178 (Ind. 1993)). As an appellate court, we are in a poor position to look at a cold transcript and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence. *Montgomery*, 59 N.E.3d at 349-50. To reverse a trial court's custody ruling, it is not enough that the evidence might have supported a different conclusion; the evidence must positively require the conclusion contended for by the appellant before there is a basis for reversal. *Steele-Giri*, 51 N.E.3d at 124. "We may not reweigh the evidence or reassess witness credibility, and the evidence should be viewed in a light most favorable to the judgment." *Montgomery*, 59 N.E.3d at 350.

With respect to initial custody determinations, there is no presumption in favor of either parent. *See* Ind. Code § 31-14-13-2. Rather, the trial court is tasked with determining custody "in accordance with the best interests of the child." *Id*. This requires the consideration of all relevant factors, including the following:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parents;

(B) the child's siblings; and

(C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent….

*Id.*

### Discussion & Decision

Mother does not challenge any of the specific findings made by the trial court or argue that the findings do not support the judgment. She simply argues that the trial court failed to consider "uncontroverted evidence of Father's withholding Mother's parenting time due to his prejudice against Mother's same-sex marriage" and evidence of domestic violence by Father. *Appellant's Brief* at 4. We reject Mother's invitation for us to reweigh the evidence and judge the credibility of the witnesses.

First, we address Mother's assertion that the trial court overlooked evidence of a pattern of domestic violence perpetrated against her by Father. Mother offered vague testimony at the final hearing regarding physical abuse that allegedly occurred at some undefined point during her lengthy relationship with Father. She also indicated that Father pulled on her and tripped her during the

incident at her parents' home on August 11, 2015. Mother called a witness to corroborate her claims of physical violence, but the friend indicated that she only witnessed verbal arguments between the couple years ago. Further, in the two years D.D. had been involved with Mother, she testified that she had never personally witnessed any such physical violence. Under the circumstances, we cannot say that the evidence required a finding that a pattern of domestic violence existed in this case.

[19] Next, Mother makes a bald assertion that Father withheld parenting time from her because of her same-sex marriage. Father, however, testified that he withheld parenting time after the Wisconsin trip because Mother had taken the Children out of state without his knowledge and he was fearful – based on conversations with others – that she would do so again. While his actions may not be defensible, it is not clear that they were based on the nature of Mother's relationship with D.D.

[20] Mother also asserts that Father and Grandparents have made inappropriate comments to the Children about Mother's relationship with D.D., which has negatively impacted the Children. For example, Mother claims that Father and his family have "*communicated to the children* that Mother and her partner will go to hell for being together." *Appellant's Brief* at 10 (emphasis added). The record does not support this statement.

[21] Father and Grandparents may disagree with Mother's lifestyle, but the evidence does not establish that they have communicated any negative feelings to the

Children.  Further, during his testimony, Father agreed that Mother had a constitutional right to marry D.D. and that Mother remained a fine parent with whom he wanted to continue sharing joint custody of the Children.

[22] Mother's claims of discrimination and negative effects on the Children are not borne out in the record.  Moreover, we reject her baseless claim that the trial court denied her request for primary custody due to her relationship with D.D. and Father's objections thereto.  The trial court's custody determination is amply supported by its findings.

[23] Judgment affirmed.

Kirsch, J. and Mathias, J., concur.